IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SARAH E. T.,

                              Plaintiff,

             v.                                            Civil Action No.
                                                           5:20-CV-1002 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

AMDURSKY, PELKY LAW FIRM          AMY CHADWICK, ESQ.
26 East Oneida Street
Oswego, NY 13126

FOR DEFENDANT:

SOCIAL SECURITY ADMIN.            CHRISTOPHER L. POTTER, ESQ
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

        Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Acting Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral argument was conducted in connection with those motions on January 18, 2022, during a telephone conference, held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Plaintiff's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that plaintiff was not

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)    The matter is hereby REMANDED to the Commissioner, with a directed finding of disability, for the purpose of calculating benefits owing to the plaintiff.

4)    The clerk is directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:   January 24, 2022
          Syracuse, New York

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
SARAH T.,
                                        Plaintiff,


-v-                                     20-CV-1002


COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
-----------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
January 18, 2022
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    AMDURSKY, PELKY LAW FIRM
    26 East Oneida Street
    Oswego, New York 13126
    BY:  **AMY CHADWICK, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    J.F.K. Federal Building, Room 625
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **CHRISTOPHER LEWIS POTTER, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (The Court and all counsel present by telephone.

2     Time noted:  10:33 a.m.)

3          THE COURT:  All right.  Let me begin by thanking you

4     both for excellent and very spirited presentations.

5          The Commissioner has pointed out that an issue has

6     been raised that was not precisely briefed by the plaintiff and

7     asks that the Court consider that in making its determination

8     and I -- if that were pivotal to my ruling, I would afford the

9     Commissioner the opportunity to more fully brief the issue, as

10    well as the plaintiff, obviously.  I don't find it to be

11    determinative of my decision and so I will go ahead and issue a

12    decision now.

13         Plaintiff has commenced this proceeding pursuant to

14    42, United States Code, Sections 405(g) and 1383(c)(3) to

15    challenge an adverse determination by the Commissioner of Social

16    Security finding that plaintiff was not disabled at the relevant

17    times and therefore ineligible for the benefits for which she

18    applied.

19         The background is as follows:  Plaintiff was born in

20    September of 1986 and is currently 35 years of age.  She was

21    30 years old at the alleged onset date of November 18, 2016.

22    Plaintiff stands 5'1" in height and weighs 104 pounds.

23    Plaintiff lives alone in an apartment in a transitional living

24    facility.  It is a controlled setting, which will be described

25    in more detail later on.  It is operated under the offices of

1  the Oswego County Opportunity Commission.

2          Plaintiff has an 11th grade education and the

3  evidence is somewhat equivocal as to whether she was in special

4  education or regular classes.  In her function report at 181,

5  she claimed regular classes.  To Dr. Shapiro at page 463, she

6  stated that she was in special education.  She is taking GED

7  courses.  She takes the bus twice a week to undergo those

8  courses and gets a ride home with the teacher or professor.  It

9  was noted that she has failed to pass her GED exam on more than

10 one occasion.

11         Plaintiff had a baby at age 19.  The baby was put up

12 for an open adoption.  She does see the baby one time per year.

13 Plaintiff has no driver's license.  Plaintiff stopped working in

14 December of 2010.  She last worked for one summer in

15 landscaping.  She left that position when she moved.  She has

16 also worked as an employee on a trash truck.  She quit that.

17 She felt that as a female she was not treated properly by her

18 coworkers.  She has worked in various fast food settings.  She

19 quit working at McDonald's.  She was fired at Moe's for not

20 getting along with a coworker.  She has also worked as a

21 dishwasher.

22         Plaintiff has physical issues, including with respect

23 to her knee, back, and pelvis, the residual results of a failed

24 suicide attempt in April of 2015 when she jumped out a window.

25 It was noted at page 438 that when she arrived at the emergency

1  room, she had to be sedated after pulling out her intravenous or

2  IV line and throwing a bedpan of urine at a nurse.  She also has

3  vision issues and some other physical issues which are not

4  pertinent since the focus of plaintiff's challenges are on the

5  mental components of her limitations.

6          Mentally, plaintiff suffers from bipolar disorder,

7  posttraumatic stress disorder/PTSD, depressive disorder, a

8  potential borderline intellectual functioning, and cannabis and

9  alcohol use disorder.  It was noted that her mother was murdered

10  in 2011.  She was sexually abused between the ages of 5 and 12

11  while in foster care and physically abused in a relationship,

12  and these appear to all have played a role in her mental

13  functioning.

14          Plaintiff has had three psychiatric hospitalizations

15  in 2015 or 2016, and was hospitalized from September 28, 2017,

16  until October 3, 2017.  Plaintiff obtains medical treatment from

17  the Oswego Health Center and from the Oswego Hospital Behavioral

18  Services.  It's also known as the Bunner Street facility.  She

19  sees Psychiatric Nurse Practitioner Toni Usev and once a month

20  she sees an LMSW, Maureen Bradley.  She also has daily contact

21  with Oswego Transitional Services staff who assist her in

22  various regards.

23          Plaintiff has been prescribed medications over time

24  for her mental health issues including Paxil, Wellbutrin,

25  Seroquel, and Trazodone.

1          In terms of daily activities, plaintiff is able to

2    dress and groom herself, cook, clean, does some laundry.  She

3    has what she describes as a support cat.  She is able to care

4    for the cat, although she obtains help in feeding and cleaning

5    the litter box.  She does some socialization, but testified that

6    she has few friends.  She shops with help.  Apparently, the

7    transitional living facility takes a group van of clients

8    shopping and assists them in picking out their food and paying.

9    She goes to the library.  She can play laptop games and movies.

10   She participants in craft groups at the transitional living

11   facility.  She can do word puzzles.  She has a history of drug

12   and alcohol abuse and she is a daily smoker of cigarettes.

13          Procedurally, plaintiff applied for Title XVI

14   Supplemental Security Income payments on November 18, 2016,

15   alleging an onset of disability of March 1, 2011.  That, of

16   course, was amended to the date of her application.  In her

17   function report at page 180, she claimed disability based upon

18   bipolar disorder, legally blind, posttraumatic stress disorder,

19   depression, anxiety, agoraphobia, panic disorder, acid reflux,

20   and hepatitis C.

21          At the hearing, she testified she is unable to work

22   because of visual defects, a learning disability, anxiety, panic

23   attacks, and back and pelvis pain.  A hearing was conducted on

24   October 11, 2018, by Administrative Law Judge Jennifer Gale

25   Smith to address the application for benefits.  That was

1  adjourned because plaintiff was not accompanied by a

2  representative.  At a scheduled hearing date of January 13,

3  2019, her attorney apparently appeared but plaintiff did not due

4  to a transportation issue.  On May 7, 2019, a hearing was

5  ultimately conducted where plaintiff, as well as a vocational

6  expert, gave testimony.  On May 20, 2019, Administrative Law

7  Judge Smith issued an unfavorable decision which became a final

8  determination of the agency on July 27, 2020, when the Social

9  Security Administration Appeals Council denied plaintiff's

10  request for a review.  This action was commenced on August 28,

11  2020, and is timely.

12          In her decision, ALJ Smith applied the familiar five

13  step test for determining disability.  At step one, she found

14  that plaintiff had not engaged in substantial gainful activity

15  since the date of her application.

16          At step two, she concluded that plaintiff does suffer

17  from impairments that impose more than minimal limitations on

18  her ability to perform basic work functions, specifically a

19  fractured pelvis, sprain of the right knee, pars defect in the

20  lumbar spine, attention deficit hyperactivity disorder,

21  posttraumatic stress disorder, anxiety disorder, panic disorder

22  with agoraphobia, personality disorder, bipolar disorder, and

23  substance abuse disorder.

24          At step three, ALJ Smith concluded that plaintiff's

25  impairments do not meet or medically equal any of the listed

1   presumptively disabling conditions set forth in the

2   Commissioner's regulations, specifically considering listings

3   1.02, 1.04, and 2.02 with regard to her physical impairments and

4   12.04, 12.06, 12.08, and 12.15 with regard to the mental health

5   conditions.  The ALJ next concluded that plaintiff, despite her

6   conditions, retains the residual functional capacity to perform

7   light work as defined in the regulations with additional

8   limitations that are both addressed in her physical and her

9   mental health capacity.

10          Applying that RFC, the Administrative Law Judge

11  concluded at step four that there's no past work to be analyzed

12  and proceeded to step five where she first concluded that if

13  plaintiff were capable of performing a full range of light work,

14  a finding of no disability would be directed by the

15  Medical-Vocational Guidelines set forth in the regulations, and

16  specifically Rule 202.17 of those guidelines.  Because of the

17  additional limitations that erode the job base on which the

18  Medical-Vocational Guidelines are predicated, ALJ Smith elicited

19  testimony from a vocational expert and concluded that plaintiff

20  is capable of performing available work in the national economy,

21  citing as representative positions a photocopy machine operator

22  and a cleaner/housekeeper, and therefore concluded that

23  plaintiff was not disabled at the relevant times.

24          The Court's function, of course, in this proceeding

25  is to determine whether correct legal principles were applied

1    and the result is supported by substantial evidence, defined as

2    such relevant evidence as a reasonable mind would find

3    sufficient to support a conclusion.  It is an extremely

4    deferential standard.

5              Plaintiff raises four basic contentions in this

6    proceeding.  She first argues that it was error to conclude that

7    she was not presumptively disabled under listings 12.04, 12.06,

8    12.08, and 12.15, focusing on the analysis of the so-called B

9    and C criteria associated with those listings.  Secondly, she

10   argues that the Administrative Law Judge failed to properly

11   weigh the opinions and the evidence, specifically focusing on

12   opinions given by Dr. E. Kamin, a state agency consultant,

13   Dr. Jeanne Shapiro, a consultative one-time examiner, and Nurse

14   Practitioner Toni Usev who has treated the plaintiff over time

15   for her mental condition.  Third, she asserts error in assessing

16   plaintiff's alcohol and marijuana use.  Fourth, she contends

17   that the RFC finding's unsupported and does not take into

18   account the need for her to be off task or absent from work.

19             Addressing first the listings argument.  Under each

20   of the listings cited, the so-called B or C criteria must be met

21   in order for the plaintiff to be deemed presumptively disabled.

22   The B criteria examines four domains:  The first, understand,

23   remember, or apply information; the second, interact with

24   others; the third, concentrate, persist, or maintain pace; and

25   the fourth, adapt or manage oneself.  They're addressed in

1    Section 12.00E of the listings.  Under the B criteria, the

2    listing is met if there is one finding of extreme or two markeds

3    in the B criteria.  A marked limitation is defined as your

4    functioning in this area independently, appropriately,

5    effectively, and on a sustained basis is seriously limited.  An

6    extreme limitation is defined as you are not able to function in

7    this area independently, appropriately, effectively, and on a

8    sustained basis.  The ALJ found only moderate limitations in all

9    four domains at page 13 based on Dr. Shapiro and her belief of

10   plaintiff's high level of functioning.  One of the things

11   specifically cited by the ALJ was that plaintiff was able to

12   manage money, although Dr. Shapiro in her opinion found at page

13   467 that plaintiff is incapable of managing money.

14           Turning to the maintaining attention, concentration,

15   and pace.  That's defined in -- that domain is addressed,

16   rather, in 12.00E3, which states that this area of mental

17   functioning refers to the abilities to focus attention on work

18   activities and stay on task at a sustained pace.  Dr. Shapiro

19   found mild limitation in this domain, but noted that plaintiff's

20   mood and affect were variable.  And in her -- in the objective

21   portion of her report, she found, for example, that plaintiff's

22   motor behavior was restless, eye contact was poor, her speech

23   was pressured and rapid, her affect was variable, she was crying

24   one minute and manic the next, her mood was variable and

25   vacillated between mania and depression.  It was noted by the

1   field representative who conducted an interview of plaintiff at

2   page 189 that plaintiff had a great deal of difficulty

3   concentrating and staying on task.  The ALJ during the hearing

4   noted on more than one occasion that plaintiff was fidgeting and

5   was playing with her hair.  Plaintiff testified to having racing

6   thoughts and an inability to sit still.  I find error in

7   evaluating this domain and opine that at least marked limitation

8   should have been concluded.

9           The inability to interact with others is also a

10  problem area.  That is defined as -- this area of mental

11  functioning refers to the abilities to relate to and work with

12  supervisors, coworkers, and the public.  Of course, in the RFC,

13  there was somewhat of a limitation socially in this regard, the

14  limitation being that the plaintiff should have occasional

15  contact with coworkers, supervisors, and no public contact.

16  Nonetheless, there's a serious indication of problems in this

17  area.  Plaintiff suffers from angry outbursts.  She's

18  uncomfortable around others.  She was fired at Moe's for not

19  getting along with coworkers.  In her function report, she

20  stated that she isolates and has difficulty getting along with

21  others.  Dr. Shapiro, in her opinion, found that plaintiff is

22  moderately to markedly limited in her ability to consistently

23  relate to and interact well with others at page 466.

24          I believe that finding only moderate limitation in

25  this area is not supported by substantial evidence.  Dr. Kamin

 1    clearly did indicate at page 53 that there was only moderate

 2    limitation in this domain, but as plaintiff's counsel argues,

 3    did not have the benefit of many of the subsequent records of

 4    treatment beyond initial intake and Dr. Shapiro's opinions.

 5            In the area of adapting and managing oneself, that is

 6    addressed in 12.00E4.  This area of mental functioning refers to

 7    the abilities to regulate emotions, control behavior, and

 8    maintain wellbeing in a work setting.  I also believe that the

 9    finding of moderate limitation in this area is not supported by

10    substantial evidence.  Nurse Practitioner Usev, who has

11    expertise in the area of psychiatrics, which is a proper

12    consideration when evaluating her -- his opinion as a

13    non-treating acceptable medical source under 20 C.F.R. Section

14    416.927, has longitudinal knowledge of the plaintiff and has

15    given an opinion that this is a problem area.  There are two

16    opinions from Nurse Practitioner Usev, one from July 14, 2017,

17    at 287 to 288, and the second from October 31, 2008, at 1295 to

18    1300 of the Administrative Transcript.

19            In the domain of adapting and managing oneself, in

20    that area, Nurse Practitioner Usev finds Category IV -- I'm

21    sorry, in -- yes, Category IV in two areas.  And Category IV is

22    defined in the form as markedly limited functioning in this area

23    independently, appropriately, effectively, and on a sustained

24    basis is seriously limited.  At 1297, it is found -- it's opined

25    that plaintiff is markedly limited in the ability to perform

1   within a schedule, 1298, markedly limited in awareness of normal

2   hazards.  Also in 1299, it was opined that plaintiff would be

3   off task more than 30 percent of the time and absent from work

4   five or more days.

5          The domain of understanding, remembering, and

6   applying information is addressed in 12.00E1.  And I'll note in

7   this regard that plaintiff has limited functioning and fund of

8   knowledge and limited education, having failed the GED test on

9   more than one -- on more than one occasion.  So I conclude that

10  the finding of not only moderate limitation in these domains is

11  not supported by substantial evidence, the evidence at best, per

12  the Commissioner, suggests at least two marked limitations and

13  quite possibly one extreme limitation.

14         Turning to the C criteria.  The C criteria of those

15  limitations states as follows, and I'm quoting from 12.06:  Your

16  mental disorder in this listing category is serious and

17  persistent, that is you have a medically documented history of

18  the existence of a disorder over a period of least two years --

19  and that, of course, is met here -- and there's evidence of both

20  medical treatment, medical health therapies, psychosocial

21  support or a highly structured environment that is ongoing and

22  that diminishes the symptoms and signs of your mental disorder

23  and marginal adjustment, that is you have minimal capacity to

24  adapt to changes in your environment or to demands that are

25  already part of your daily life.  You must meet both of those in

1  order to meet the C criteria.  They were discussed by the

2  Administrative Law Judge at page 14.

3          In my view, the Administrative Law Judge grossly

4  overstated plaintiff's functioning.  She is in a transitional

5  living facility, a program that was meant to be only 18 to

6  24 months at page 264.  She's been living in that facility for

7  over two years, since 2017, that's at page 357, with no end in

8  sight that I could see from the record.  She receives help from

9  the staff in monitoring medications, taking her to the bank,

10 assisting and coordinating transportation, assisting and

11 coordinating medical appointments.  She receives assistance in

12 grocery shopping.  She still requires frequent treatment and

13 there was, of course, the period of inpatient hospitalization in

14 2017.  These all appear at 1348 and 1357 to 1360 of the record.

15          Plaintiff has been in ongoing mental health therapy

16 with marginal adjustment despite being in a highly structured

17 environment.  She sees a therapist once a month and has the

18 benefit of assistance from employees at the transitional living

19 facility daily according to 1357 and 1358.  I believe the C

20 criteria -- the determination of C criteria was not -- that is

21 also not supported by substantial evidence.  I believe that

22 there is error at step three and that the error is harmful

23 because a finding should have been made that plaintiff is

24 presumptively disabled.

25          Turning to the weight of medical opinions, the

1  application in this case was filed November 18, 2016.  The old

2  regulations apply.  There is no treating source statement from

3  an acceptable medical source, although it was noted that under

4  the new regulations, Psychiatric Nurse Practitioner Usev would

5  be considered an acceptable medical source.  So in weighing the

6  opinions in the record, the ALJ was duty bound to follow 20

7  C.F.R. Section 416.927 and to consider the so-called Burgess

8  factors.

9           The opinion of Dr. Kamin is interesting.  It was

10  obviously strongly considered by the Administrative Law Judge.

11  The worksheet in the mental residual functional capacity portion

12  of the opinion is filled out and there are certain moderate and

13  marked limitations noted, but there is no summary in the MRFC

14  portion of the opinion which is something I would normally

15  expect to see.  I'm not sure that there was error other than as

16  I indicated previously in finding only moderate limitations in

17  the B criteria.

18           Dr. Shapiro's medical source statement based on her

19  examination of the plaintiff on January 27, 2017, is in the

20  record at 463 to 467.  The medical source statement notes some

21  limitations, including moderate to marked limitation regarding

22  plaintiff's ability to make appropriate decisions and moderate

23  to marked limitations in her ability to consistently relate to

24  and interact well with others.  There also appear to be moderate

25  to marked limitations regarding her ability to deal with stress.

1          The Administrative Law Judge seemed to focus on the

2     alleged misrepresentation of plaintiff in connection with her

3     alcohol and marijuana use at page 16 to 17.  In my view, the

4     ALJ's belief that plaintiff was misstating or understating her

5     drug and alcohol use at the hearing colored her decision.  It

6     was a focus of the hearing.

7          Dr. Shapiro's opinion is supported by her exam

8     findings and I think that there was error in the weight given to

9     Dr. Shapiro's opinion.  Also, with regard to Nurse Practitioner

10    Usev, who, as I indicated, has given two opinions, it was given

11    limited weight at page 17 of the Administrative Law Judge's

12    opinion.  To her credit, she did cite some five reasons that --

13    why she gave only limited weight to that opinion, but Nurse

14    Practitioner Usev has great longitudinal treatment of the

15    plaintiff, seeing her monthly.  She has expertise in the area of

16    Psychiatric Nurse Practitioner care.  It was noted that it's a

17    mental condition so that plaintiff's condition is going to

18    fluctuate.  The Administrative Law Judge did, in my view, cherry

19    pick and did find some positive reports on examination, but,

20    also, there are numerous contrary reports.  It's unclear how the

21    ability to attend medical appointments with staff assistance can

22    translate into the ability to perform work five days,

23    eight hours a day.

24          ALJ -- I'm sorry, Nurse Practitioner Usev has seen

25    the plaintiff since 2015, although there was a brief hiatus in

1    the 2015/2016 area.  With regard to public transportation, yes,

2    she can take public transportation, but mostly Medicaid buses.

3    And it was noted that she goes independent and not in a group

4    setting due to issues that she has had with others.  That's at

5    page 1311.  The weight given to Nurse Practitioner Usev's

6    opinion also, in my view, is error and it effects the RFC and

7    the step five finding.

8             So I do find error on the last issue as the basis for

9    a remand because I believe the case should be remanded.  If

10   there is persuasive proof of evidence under Section 405(g), the

11   Court can either modify or reverse a decision if there are gaps

12   in the record, for example, that need to be filled, a remand

13   without a directed finding would be appropriate.  However, when

14   there's no reason to believe that remand would serve any useful

15   purpose, the Court may, in its discretion, deem it appropriate

16   to remand solely for calculation of benefits, *Balsamo v. Chater*,

17   142 F.3d 75, 82, Second Circuit, 1998.  I believe that this is

18   such a case.  I believe there is persuasive proof of disability

19   in this case and therefore will grant judgment on the pleadings

20   to the plaintiff, set aside the determination of the

21   Commissioner, and remand the matter with a directed finding of

22   disability solely for calculation of benefits.

23             Thank you both for excellent presentations.  Stay

24   safe and warm.

25             MS. CHADWICK:  Thank you, your Honor.  You, too.

1              MR. POTTER:  Thank you, your Honor.

2              (Time noted:  11:06 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3

 4                CERTIFICATE OF OFFICIAL REPORTER

 5

 6

 7            I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,

 8   NYRCR, Official U.S. Court Reporter, in and for the United

 9   States District Court for the Northern District of New York, DO

10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United

11   States Code, that the foregoing is a true and correct transcript

12   of the stenographically reported proceedings held in the

13   above-entitled matter and that the transcript page format is in

14   conformance with the regulations of the Judicial Conference of

15   the United States.

16

17            Dated this 24th day of January, 2022.

18

19            s/ Hannah F. Cavanaugh_____

20            HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR

21            Official U.S. Court Reporter

22

23

24

25
```